Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Kimberly Sharkey
Georgia Bar No. 121471
Kimberly_Sharkey@fd.org
Katherine Tanaka
California Bar No. 314082
Katherine_Tanaka@fd.org
Assistant Federal Public Defenders
411 E. Bonneville Ave.
Las Vegas, NV 89101
(702) 388-6577

Counsel for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff(s), | Case No: 3:24-mj-00269 |
| v. | MOTION TO REOPEN DETENTION AND ORDER FOR RELEASE<br><br>HEARING REQUESTED |
| WILLIAM JAMES O'DONNELL,<br>Defendant(s). | |

William O'Donnell, through counsel, respectfully requests this Court reopen his detention hearing and order him released to an inpatient substance abuse treatment program. The government has charged Mr. O'Donnell by criminal complaint with one count of distribution of fentanyl resulting in death. ECF No. 1. On December 19, 2024, Mr. O'Donnell submitted to detention. ECF No. 4.

Earlier this month, Mr. O'Donnell received an ASAM evaluation by a Certified Alcohol and Drug Counselor who diagnosed Mr. O'Donnell with severe opioid use and stimulant use disorder and recommended Mr. O'Donnell attend inpatient treatment.

As discussed below, Mr. O'Donnell is neither a danger to the community nor a flight risk and, thus, should be released on the condition that he immediately enter inpatient treatment.[1] Mr. O'Donnel respectfully requests that he be referred to inpatient treatment through Volunteers of America or that he be permitted to seek treatment through his own insurance at Hope Center Recovery.

## I. BACKGROUND

### A. Mr. O'Donnell was arrested after an adult female suffered a fatal fentanyl overdose.

On December 15, 2024, as alleged in the Complaint, three adults overdosed on fentanyl, and one of the three tragically died.[2] ECF No. 1-1. All three adults had consumed other drugs that same evening, including marijuana/cannabinoids, cocaine, and methamphetamine. *Id.* at 4, 6. Following the reported overdoses, officers opened an investigation. They searched Adult 1's phone but found no evidence of any communication between Adult 1 and Mr. O'Donnell. *Id.* at 7.

---

[1] Mr. O'Donnell completed an interview with Pretrial Services out of the Western District of Washington on April 17, 2025.

[2] Consistent with the Complaint, the decedent will be referred to as Adult 1. ECF No. 1-1. The other two induvial who overdosed will be referred to as Adult 2 and Adult 3. *Id.*

On December 17, 2024, officers arrested Mr. O'Donnell and obtained a search warrant for his residence. *Id.* at 7–8. No drugs were found in the residence aside from 0.2 grams of cocaine powder in the kitchen. *Id.* at 8. Officers seized a brown bindle, clear baggie with cocaine residue, and a glass jar with fentanyl residue from Mr. O'Donnell's person. *Id.* The total weight of the drugs seized from Mr. O'Donnell, including the packaging, was approximately 19.3 grams. *Id.*

On December 19, 2024, Mr. O'Donnell had his initial appearance and did not contest the government's motion for detention. ECF No. 4. The Magistrate Judge ordered Mr. O'Donnell detained finding him (1) a risk of nonappearance because Mr. O'Donnell's family/employment/community ties were unknown and his information was unverified/unverifiable; and (2) a danger to the community based on the nature of the offense. ECF No. 5. The Magistrate Judge additionally noted that because Mr. O'Donnell did not seek release, he "may request a detention review hearing without making the required showing to reopen a detention hearing under 18 U.S.C. § 3142(f)." *Id.*

### B. Mr. O'Donnell underwent an ASAM evaluation and was recommended to receive inpatient substance abuse treatment.

On April 11, 2025, Collin Wright, a Certified Alcohol and Drug Counselor and Licensed Clinical Social Worker, conducted an ASAM evaluation and diagnosed Mr. O'Donnell with severe opioid use disorder and stimulant use disorder. Based on his evaluation and review of Mr. O'Donnell's history, Wright determined residential treatment services are necessary for Mr. O'Donnell's safety and sobriety. Wright observed that, although Mr. O'Donnell demonstrates a pattern of problematic use,

Mr. O'Donnell has also had success with prior substance abuse treatment resulting in multiple years of sobriety. Wright determined Mr. O'Donnell has a limited understanding of skills to cope with his addictive disorder and mental health problems—both of which are skills that will be directly addressed by treatment.

In the event this case results in custodial time, Mr. O'Donnell will benefit from intensive inpatient treatment, which will to allow him to develop and practice the coping skills necessary to maintain a sober lifestyle during any custodial sentence and once he reenters the community.

## II. THIS COURT SHOULD ORDER MR. O'DONNELL RELEASED TO AN INPATIENT TREATMENT FACILITY BECAUSE HE IS NEITHER A DANGER TO THE COMMUNITY NOR A FLIGHT RISK.

### A. The Bail Reform Act favors pretrial release.

Under the Bail Reform Act, a person must be released pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Bail Reform Act does not require guarantees that the person will not flee or that the person will not pose a danger—it simply requires a reasonable assurance. *See, e.g.*, *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) ("Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight."); *United States v. Portes,* 786 F.2d 758, 764 n.7 (7th Cir. 1985); *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta,* 760 F.2d 887, 890–92 (8th Cir. 1985);

*United States v. Himler,* 797 F.2d 156 (3rd Cir. 1986); *see also United States v. Tortora,* 922 F.2d 880, 884 (1st Cir. 1990) (holding that even where the issue is the safety of the community, Congress did not require guarantees in enacting the Bail Reform Act). So long as there are conditions that will *reasonably assure* the individual's appearance and the safety of the community, the individual must be released.

In evaluating release, courts consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). To justify detention, the government must prove, by clear and convincing evidence, that there are no conditions that can reasonably assure the safety of the community or, by a preponderance of the evidence, that there are no conditions that can reasonably assure defendant's appearance. *United States v. Motamedi*, 767 F.2d 1403, 1406–07 (9th Cir. 1985). Any doubts with respect to release should be resolved in favor of the defendant. *See id.* at 1405 ("Doubts regarding the propriety of release should be resolved in favor of the defendant." (citing *Herzog v. United States,* 75 S. Ct. 349, 351 (1955)).

In cases where there is a rebuttable presumption in favor of detention under Section 3142(e)(3), a defendant simply needs to produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community." *United States v. Thomas,* 667 F. Supp. 727, 728 (D. Or. 1987) (citing

*United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991). The burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992) ("The ultimate burden of persuasion remains on the government, and the burden placed on the defendant to rebut the presumption is small." (internal citation omitted)); *United States v. Freitas*, 602 F. Supp. 1283, 1289–90 (N.D. Cal. 1985) ("A presumption may affect either the burden of proof or merely the burden of producing evidence. . . the rebuttable presumption in the Bail Act is intended only to shift the burden of production.").

Regardless of whether the court finds the presumption has been rebutted, detention still cannot be imposed unless the court finds that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142(e)(1). If the defendant rebuts the presumption by presenting evidence that he is neither a danger to the community, nor a flight risk, the presumption merely becomes an evidentiary finding "to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Hir*, 517 F.3d at 1086.

### B. Mr. O'Donnell is neither a danger to the community nor a flight risk.

Prior to the instant offense, Mr. O'Donnell lived in an apartment in Portland with his wife. The two met at an AA meeting while Mr. O'Donnell was living in Arizona, and they have been married for over two decades. They have children and grandchildren, and they enjoy spending time with their family when they can.

For the first thirty years of Mr. O'Donnell's life, Mr. O'Donnell had no criminal history. His subsequent encounters with the legal system are related to, and a result of, his drug addiction. When able to maintain his sobriety, Mr. O'Donnell has demonstrated the ability to lead a successful, law-abiding life. He admitted himself to his first rehabilitation program at the age of 35 in Arizona. After successfully completing the program, he remained sober for seven years before suffering a relapse. During his period of sobriety, Mr. O'Donnell was employed at a cabinet manufacturing company, successfully moving up the company ranks until he was promoted as foreman over a team of employees and, eventually, plant manager. He also began taking classes at the local community college to work towards obtaining his engineering degree, and through AA, he sponsored others who were struggling with addiction.

Since moving to Portland, Mr. O'Donnell has continued to enjoy periods of sobriety, followed by devastating periods of relapse—which have been triggered by high levels of stress. Despite the relentless struggle of suffering from drug addiction, Mr. O'Donnell continues to seek out treatment. He has successfully completed substance abuse treatment programs at Serentiy Lane and De Paul Treatment Center—both of which have led to periods of sobriety. While sober, Mr. O'Donnell obtained a job at Portland State University working in their maintenance department and again started taking college classes.

Unfortunately, in late 2023 and early 2024, Mr. O'Donnell was diagnosed with a severe case of sepsis, which eventually led to a severe spinal infection

(osteomyelitis with epidural abscess) and spinal stenosis that required spinal surgery and multiple weeks of IV and physical therapy. Because of his addiction history, his pain management options were limited and, as a result, Mr. O'Donnell sought out his own pain management and relapsed. He was struggling with daily use of heroin and cocaine when he was arrested for the instant offense.

Since being in custody, Mr. O'Donnell has not had any disciplinary issues. He tries to keep his mind occupied by reading. He reports most recently finishing and enjoying *The Revolutionary: Samuel Adams* by Stacy Schiff. Because of his back issues, Mr. O'Donnell requires a wheelchair or a walker and is unable to get a job at FCI Sheridan to help keep himself productive. His specific medical needs require regular attention from the medical unit at Sheridan, which—even before the 2025 gutting of the federal workforce—was already facing a staffing crisis causing dangerous delays in necessary medical care.[3] Mr. O'Donnell requires daily trips to medical for his prescription medication and currently has two hernias that need to be regularly monitored. Mr. O'Donnell reports it is difficult to be timely seen by medical due to staff shortages.

### C. Mr. O'Donnell has met his burden of production to rebut the presumption of detention.

In light of the above history, Mr. O'Donnell has met his burden of production to rebut the presumption of detention. When provided with the structure of

---

[3] Glenn Thrush, *Staffing Crisis at Federal Prisons Highlighted in Oregon*, NY TIMES, (May 22, 2024), https://www.nytimes.com/2024/05/22/us/politics/oregon-prison-staffing-shortage.html

treatment, he has a demonstrated history of sobriety and has shown that he can lead a successful and healthy life. Additionally, because the treatment recommendation is for inpatient treatment specifically, there is little risk Mr. O'Donnell will have access to the drugs and negative influences that led to the instant offense; he will also have support and structure to manage stress, which has historically been a trigger for him.

Further, while the government argued Mr. O'Donnell is a risk of nonappearance, there is no evidence to support this claim in the record. ECF No. 3 at 13–14. Rather, Mr. O'Donnell has ties to the community through his wife and extended family and an apartment he rents in the Portland community. His chronic medical conditions and financial limitations also weigh against any risk of flight.

Notably, although the allegations in this case are serious, Mr. O'Donnell is far from the person Congress intended the detention presumption to apply. *See* Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 81 FED. PROB. 52, 58 (2017) ("[The] presumption was created with the best intentions: detaining the 'worst of the worst' defendants who clearly posed a significant risk of danger to the community by clear and convincing evidence. Unfortunately, it has become an almost de facto detention order for almost half of all federal cases."); *see also* Report of the Proceedings of the Judicial Conference of the United States (Sept. 12, 2017) (A 2017 study commissioned by the Administrative Office revealed the §3142(e) presumption "the §3142(e) presumption was unnecessarily increasing detention rates of low-risk defendants, particularly in

drug trafficking cases."). There is no evidence Mr. O'Donnell was engaged in large drug trafficking schemes or in possession of more than user amounts of illicit drugs. Accordingly, this Court should find Mr. O'Donnell has met his burden to rebut the presumption of detention.

**D. The Section 3142(g) factors weigh in favor of release.**

With respect to the nature and circumstances of the offense, the record does not support a finding that Mr. O'Donnell poses such a danger to the community that it warrants continued detention. Upon the traffic stop leading to his arrest, Mr. O'Donnell was immediately cooperative with the police. No guns were found on his body, in his residence, or in the car in which he was travelling. He was in possession of personal-use amounts of drugs, but there is nothing in the record to suggest Mr. O'Donnell had access to, or was trafficking, large quantities of drugs.[4] There is no evidence of prior sales, planned meet-ups, or advertising of drug sales. Additionally, releasing Mr. O'Donnell to inpatient treatment now—directly from custody—will eliminate the risk he posed back in 2024 when he was daily accessing and using drugs. Thus, the nature and circumstances of the offense do not weigh in favor of continued detention. *Cf. United States v. Dylan Wilson*, Case No. 3:21-cr-0465-MO-2, ECF Nos. 30, 93 (D. Or) (ordering defendant released despite allegations he

---

[4] Nothing in the discovery provided by the government suggests Mr. O'Donnell was involved in large-scale drug trafficking, drug importation, or drug manufacturing.

advertised a menu of drugs online, ultimately selling fentanyl to minor females, one of whom died of an overdose).

As to the weight of the evidence, this is the "least important of the [Section 3142(g)] factors." *Motamedi*, 767 F.2d at 1408. While Mr. O'Donnell is still waiting to receive substantial portions of the discovery, there are facts that undermine the government's claim the evidence "is extremely strong." ECF No. 3. Notably, there were multiple people at the O'Donnell residence on the night of the overdose, and the person who reported seeing Mr. O'Donnell give the drugs to Adult 1 was Adult 2 who had consumed both cocaine and alcohol throughout the evening. Adult 1 also used multiple drugs in the hours before overdosing, which raises questions about the proximate cause of her death. Accordingly, the weight of the evidence alone, does not justify Mr. O'Donnell's continued detention.

With respect to Mr. O'Donnell's history and characteristics, as discussed above, he is someone who suffers from a serious drug addiction but recognizes and benefits from the structure and support drug treatment offers. Following successful completion of drug treatment programs, Mr. O'Donnell has maintained lengthy periods of sobriety and has been a contributing member of society. If released, he will receive intensive substance abuse treatment that he will not have access to while in pretrial detention. Mr. O'Donnell will also have better access to necessary medical treatment if he is released, which will help relieve the over-burdened staff at FCI Sheridan. Thus, Mr. O'Donnell's history and characteristics weigh in favor of release.

Lastly, releasing Mr. O'Donnell to inpatient treatment will not pose a serious risk of danger to any person or the community because he will be in a supportive, structured environment, focusing on his own recovery. While the time in custody has cut off Mr. O'Donnell's regular drug contacts that enabled his destructive daily use, counseling and treatment now will give him the best chance at success and sobriety when he eventually returns to the community after this case is completed. *See United States v. Littlebull*, No. 1:24-CR-02081-SAB, 2025 WL 222071, at *2 (E.D. Wash. Jan. 16, 2025) (granting motion to reopen detention and release to inpatient treatment following defendant's evaluation and proposed treatment plan).

## III. CONCLUSION

For the foregoing reasons, Mr. O'Donnell respectfully requests this Court reopen his detention hearing and release him to inpatient treatment while this case is pending.

Dated: April 18, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/Katherine Tanaka*
Katherine Tanaka, CA Bar # 314082
Assistant Federal Public Defender

*/s/Kimberly Sharkey*
Kimberly Sharkey, GA Bar # 121471
Assistant Federal Public Defender